**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

G&G CLOSED CIRCUIT EVENTS,
LLC,

     Plaintiff,

        v.

DON TEQUILA BAR & GRILL L.L.C.
D/B/A DON TEQUILA BAR & GRILL;
SANTO DIAZ HIDALGO; JOHN DOES
1-10 AND ABC CORPS. 1-10,

     Defendants.

Civ. No. 19-00084 (RMB/JS)

**OPINION**

PRESSLER, FELT & WARSHAW, LLP
By: Michael Jon Peters, Esq.
7 Entin Road
Parsippany, New Jersey 07054
     Counsel for Plaintiff


**BUMB, UNITED STATES DISTRICT JUDGE**

    This matter comes before the Court upon Plaintiff G & G

Closed Circuit Events, LLC's Motion for Default Judgment against

Defendants Don Tequila Bar & Grill L.L.C. d/b/a Don Tequila Bar

& Grill and Santo Diaz Hidalgo. For the reasons that follow,

the motion is **GRANTED IN PART AND DENIED IN PART.**

**I.   Background**

    Plaintiff is a distributor of sports and entertainment

programming that purchased the domestic commercial exhibition

rights to broadcast the *Gennady Golovkin v. Daniel Jacobs, WBA Super World Middleweight Championship Fight Program* nationwide on March 18, 2017. (Compl. ¶ 20; Plf's Br. at 1). Pursuant to its distribution rights, Plaintiff entered into sub-licensing agreements with various commercial establishments who, in turn, were permitted to broadcast the program. (Compl. ¶ 21; Plf's Br. at 1.) The transmission of the program was encrypted and available only to customers who paid Plaintiff's license fees. (Plf's Br. at 2).

Plaintiff filed its complaint against Defendants on January 3, 2019, alleging that Defendants knowingly and willfully violated 47 U.S.C. §§ 553 and 605. Specifically, Plaintiff alleges that Defendant Hidalgo is the license holder for the commercial establishment Don Tequila Bar & Grill L.L.C. d/b/a Don Tequila Bar & Grill, and that Defendant Hidalgo had the right and ability to supervise the activities therein. (Compl. ¶¶ 10-11). Plaintiff further alleges that, under the direction of Defendant Hidalgo, Defendant Don Tequila, without obtaining a license from Plaintiff, unlawfully intercepted and decrypted the program and broadcast it to approximately thirty-five patrons on March 18, 2017. (Compl. ¶¶ 11-24; Osgood Affidavit). Plaintiff seeks judgment under 47 U.S.C. § 605 in the amount of $19,200.00 and also requests thirty days from the entry of judgment to submit its costs and reasonable attorneys' fees.

## II.  Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of a default judgment.  Once default has been entered, and a party has moved for default judgment, the Court, prior to entering default judgment, must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." Joe Hand Promotions, Inc. v. Batra, No. 15-5863, 2017 WL 838798, at *2 (D.N.J. March 2, 2017).  Additionally, the following three factors determine whether default judgment should be granted: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

## III. Discussion

### A.  Jurisdiction and Service of Process

The Court must ascertain its jurisdiction both over the subject matter and the parties before entering default judgment against a party that has not filed responsive pleadings. HICA Educ. Loan Corp. v. Surikov, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015).

Here, the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under 47 U.S.C. §§ 553 and 605, both of which provide private rights of action to an aggrieved party. See 47 U.S.C. §§ 553(c); 605(e). Additionally, the Court has personal jurisdiction over Defendants because both were personally served in New Jersey. See Fed. R. Civ. P. 4(e), (h)(1); N.J. Ct. R. 4:4-4(a) ("The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State pursuant to R. 4:4-3."). Specifically, Defendant Hidalgo was properly served pursuant to N.J. Ct. R. 4:4-4(a)(1) because Ms. Torres was authorized to receive process on Defendant Hidalgo's behalf [see Docket Entry # 5], and Defendant Don Tequila was properly served pursuant to N.J. Ct. R. 4:4-4(a)(6) because Ms. Ortiz was authorized to receive process on its behalf [see Docket Entry # 4].

## B. Sufficiency of Plaintiff's Causes of Action

To state a claim under 47 U.S.C. § 553 or § 605, a plaintiff must allege that defendants intercepted a broadcast without authorization and then showed the broadcast to others. See J & J Sports Prods., Inc. v. Edrington, No. 10-3789, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012). Further, if a plaintiff demonstrates that "the interception of the broadcast was willful

4

and for commercial advantage or private gain," a court may award enhanced damages. Id.; 47 U.S.C. § 605(e)(3)(C)(ii).

Here, Plaintiff pleads that it purchased the domestic commercial exhibition rights to broadcast the *Gennady Golovkin v. Daniel Jacobs, WBA Super World Middleweight Championship Fight Program*, telecast nationwide on Saturday, March 18, 2017. (Compl. ¶ 20) Plaintiff further alleges that it entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the above-mentioned program, and that Defendants failed to enter into any licensing agreement with Plaintiff. (Compl. ¶ 21; Gagliardi Affidavit ¶ 7) In addition, Plaintiff's investigator went to Don Tequila Bar & Grill on March 18, 2017 and observed the program being shown on five televisions to approximately thirty-five customers. These allegations are sufficient to establish that Defendants were not authorized to intercept the broadcast, and that the broadcast was nevertheless intercepted and shown to others for commercial gain. Thus, Plaintiff has stated a claim for violation of the relevant statute.

### C. The Default Judgment Factors

As stated *supra*, before entering default judgment the Court must make explicit factual findings regarding (1) the prejudice to plaintiff should default be denied, (2) whether defendants

have a meritorious defense, and (3) the culpability of defendants. <u>Chamberlain</u>, 210 F.3d at 164.

Here, the <u>Chamberlain</u> factors support entering default judgment. First, this lawsuit, and the entering of default judgment, is Plaintiff's only means for seeking relief against Defendants for its alleged harm. As a result, Plaintiff will be prejudiced in the absence of a default judgment.

Next, nothing in the papers before the Court indicates that Defendants have any available defense. Moreover, because Defendants have not responded, they have necessarily failed to present anything that could provide a basis for a meritorious defense. <u>See</u> <u>Joe Hand Promotions</u>, 2017 WL 838798, at *3. Finally, the Court is permitted to infer Defendants' culpability based on their failure to answer without any explanation, <u>id.</u>, and will do so in this case. Therefore, the Court finds default judgment to be warranted.

**D. Damages**

Though the Court may take a complaint's factual allegations as true for purposes of granting a default judgment, a plaintiff must still prove damages. <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990).

The relevant provision of the statute allows for an award of statutory damages between $1,000 and $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a court deems enhanced

damages warranted, the award may be increased by up to $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Here, Plaintiff seeks $4,800.00-- treble its commercial licensing fee-- in statutory damages for the alleged violation. While the Third Circuit has not established a formula for determining appropriate damages under 47 U.S.C. § 605, Plaintiff argues this figure is warranted because the Defendants acted willfully in intercepting the encrypted signal. Courts in this District, however, have consistently looked to actual damages-- i.e., the cost of the licensing fee-- to measure the appropriate statutory damages. See, e.g., J & J Sports Productions, Inc. v. Old Bailey Corp., No. 18-8829, 2019 WL 4267856, at *3 (D.N.J. Sept. 9, 2019); Joe Hand Promotions, Inc. v. Laguna Lounge, LLC, No. 16-9184, No. 16-9177, 2018 WL 314816, at *2 (D.N.J. Jan. 5, 2018); Joe Hand Promotions, Inc. v. Candelaria Assocs., LLC, 2017 WL 2304646, at *2 (D.N.J. May 25, 2017); Joe Hand Promotions, Inc. v. Batra, No. 15-5863, 2017 WL 838798, at *2 (D.N.J. March 2, 2017); Joe Hand Promotions, Inc. v. Waldron, No. 11-849, 2013 WL 1007398 (D.N.J. March 13, 2013).

As Judge Kugler explained in Waldron, enhanced damages under the statute serve as the deterrent. Statutory damages, on the other hand, like actual damages, are meant to serve a compensatory function. Waldron, 2013 WL 1007398, at *6-7; see Old Bailey Corp., 2019 WL 4267856, at *3. The Court finds Judge

7

Kugler's reasoning persuasive and therefore will award statutory damages equal to Plaintiff's commercial license fee of $1,600.00.

As to enhanced damages, Plaintiff argues, and the Court agrees, that Defendants acted willfully for financial gain by intercepting Plaintiff's program and broadcasting it at Defendants' bar and restaurant. Therefore, the Court will exercise its discretion to award enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). But the Court declines to award Plaintiff all of the $14,400.00 requested. Instead, the Court will award $3,200.00 in enhanced damages.

Five factors guide the enhanced damages determination:

> (1) Whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast.

Batra, 2017 WL 838798, at *4.

Turning to the first factor, Plaintiff does not allege that Defendants have intercepted unauthorized broadcasts on any other occasion. The other factors also do not weigh in favor of a larger enhanced damages award because Defendants did not charge a cover fee, nor has any allegation been made that premium

8

prices or minimum drink orders were put in place for the approximately thirty-five patrons in attendance. Additionally, though Defendants advertised showing the program, they did so with a single social media post the day of the program. Further, there is nothing in the record that would allow the Court to determine how much Defendants profited from the unauthorized showing of the program. As such, the Court will award $3,200.00 in enhanced damages, in accord with other decisions in this district. See, e.g., J&J Sports Productions, Inc. v. Old Bailey Corp., No. 18-8829, 2019 WL 426756, at *4 (D.N.J. Sept. 9, 2019) (awarding twice the amount of statutory damages as enhanced damages where the plaintiff could not show repeat violations, defendant did not charge a cover fee, and only advertised once on social media); Batra, 2017 WL 838798, at *3-4 (awarding approximately twice the statutory damages as enhanced damages even when defendant charged a cover, a one drink minimum, and required a hookah purchase); Waldron, 2013 WL 1007398, at *8 (awarding double the amount of statutory damages as enhanced damages).

Finally, the statute requires the Court to "direct the recovery of full costs, including awarding reasonable attorneys' fees" to a prevailing plaintiff, 47 U.S.C. § 605(e)(3)(B)(iii), and Plaintiff has indicated that it intends to seek such an award. Accordingly, pursuant to L. Civ. R. 54.1(a) and 54.2(a),

Plaintiff shall file its motion for costs and attorneys' fees within thirty days of the date of this Opinion and accompanying Order.

## IV. __Conclusion__

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **GRANTED IN PART AND DENIED IN PART.** Accordingly, the Court will award judgment of $4,800.00 in favor of Plaintiff and against Defendants, subject to amendment to include any future award of attorneys' fees that may be awarded as a result of the anticipated Motion for Attorneys' Fees and Costs. An appropriate Order accompanies this Opinion.


Dated: January 13, 2020        <u>s/Renée Marie Bumb</u>
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE